Your Honor, this case on the document 2-17-0-7-3. In re Marriage of Lisa Jones, Petitioner, Appellant, and Matthew Jones, Respondent, Appellee. Arguing on behalf of the Petitioner, Appellant, Mr. Paul J. Barger. Arguing on behalf of the Respondent, Appellee, Ms. Nicole M. Bauer. Thank you Mr. Barger. On behalf of the Appellant, you may proceed. Thank you, Your Honor. Again, for the record, my name is Paul Barger and I represent Lisa Jones, the Appellant on this matter. In the time that is allotted to me this morning, I would like to address three different topics. The first is my opponent's claim that the appeal should be dismissed based upon the release of errors doctrine. The second thing I would like to address is the 2004 stock redemption by Law Jones. And the third is that if the court chooses to affirm the determination that Law Jones is Lisa's ex-husband's non-barrel property, then it's our contention that the division of barrel property is an abuse of discretion and I would like to address that. First, under the release of errors doctrine, a litigant cannot attack a decree if by reason of enjoying the benefits, the opposing party would be placed at a distinct disadvantage. A critical inquiry according to the cases is the existence of a distinct disadvantage should the case be remanded. Here, there is no distinct disadvantage for Matthew because he has filed no cross appeal and if the judgment is affirmed, my client will keep the property awarded to her and he will keep the property awarded to him. So there is no distinct disadvantage in the release of errors doctrine does not apply here. It wouldn't apply to property that was jointly owned either, would it? Does the release of errors doctrine apply to any jointly owned property? I don't think it applies to anything here. The second point that I would like to address is the 2004 stock redemption of the non-barrel property of Law Jones. The first thing I want to say is that I made a mistake in my brief and I believe that counsel did likewise. I said that in considering that, that this court would have to apply the Memphis way of the evidence standard and my opponent said the same thing. Yesterday when I was going over the briefs in the cases, I took a look at a case which was cited in my opponent's brief called ASTA, the decision of this court, and in that case, in paragraph 17, this court said, a trial court's classification of an asset as marital or non-marital property will ordinarily be reversed only if it's against the Memphis way of the evidence. And they said the reason for this deferential standard of review is that the characterization of assets typically depends upon weighing witness credibility. And then it says, however, where the determination is one of law and does not involve determination of credibility, our review is de novo. So it's my position that the review of this 2004 stock redemption is a de novo review by your honors. With regard to that, I would like to make a comment. And why would that be? Didn't the trial judge take into consideration the testimony of the trial judge? With regard to that, with regard just to that aspect of the case, not the original thousand shares, but with regard to that aspect of the case, I think the answer to that is no. It was all documentation. Yes, it was all based on the documentation. That would be my point. And the documentation which we – well, here, let me first make this point. In 2004, the law judge had this stock redemption, okay? They bought back a thousand shares of stock, which shareholders other than my client's husband owned. Prior to that time, there were 2,000 shares of stock. Prior to the stock redemption, my client's ex-husband owned a thousand shares and therefore was a 50% shareholder in the law judge's funeral homes. After the stock redemption, although he himself did not get the stock, the corporation got it. The corporation got it, that's correct. But his thousand shares was now – he was a 100% owner of the law judge's, not a 50% owner. The same thousand shares gave him 100% ownership. So that's, I think, a significant factor. The other factor that I think is significant, too, is the way in which that – The burden of the state was reimbursed, correct? I think the answer to that is yes with regard to the original thousand shares. But I don't believe that that's true with regard to this. Because in order to effect this stock redemption, the company had to take out a $775,000 loan from Cibola Bank. My client, as an officer along with her ex-husband, signed the mortgage. In addition to that, she had to sign a – or give a guarantee. But it was unsecured, wasn't it? Huh? The guarantee was unsecured, wasn't it? I think the answer to that is correct, I mean, as far as I can tell. But I want to say that the guarantee that she gave I think is significant in terms of its terms. It says – Does this talk a lot about whether or not there's ever a default by the primary payer and whether either of the guarantors ever do actually pay anything or have to pay anything? Yes, and that's what I wanted to draw Your Honor's attention to with regard to the personal guarantee. The guarantee that Lisa signed, my client, says that no accurate thing need occur to establish the liability of Lisa hereon. And no accurate thing except full payment and discharge of all indebtedness shall in any way exonerate Lisa. But isn't that what happened? That was really the point of my question. Isn't that what happened here? I'm sorry, what? That everything was paid by the corporation. Right. Well, I don't know if this was paid off, if that's what you're saying. No, who physically paid it? The trial court found that Law Jones paid the loan, not the parties, correct? Well, no, that is correct. But my point is that her property, her rental property, was subject to being taken in the event that it failed to make that payment. But that's the point. It never did happen, though. To the best of my knowledge, it hasn't. Okay. But it doesn't change the fact that she was at risk at the time that she signed this and that she signed as an owner. So, anyhow, I think that as a result of this transaction, his 1,000 shares, which were once a 50% ownership, became a 100% ownership. So I think that that's significant, and I think that your honors are entitled to examine that in a de novo fashion, as your honor says, because this is all documents. The final point that I wanted to make has to do with the distribution of marital property. Assuming that the court finds, affirms the trial court's judgment that the Law Jones property is non-marital and belongs to my client's ex-husband, the following circumstances exist. The Law Jones was valued at a little more than $3.8 million. There's no dispute about that. The remaining marital property was valued at a little more than $1.6 million. My client's ex, I'm sorry, yeah, my client's ex got $3.8 million, plus he got half of the $1.6 million. So altogether that comes out to, I think, a little bit north of $4.6 million, and she got $800,000. Now that is, of all the property that was awarded in this case, he got 85% of it, she got about 15% of it. It's our position that after a 25-year marriage, where my client raised five children, where she's been out of the workforce by agreement of the parties for all of this period of time, 15% of this property, $800,000 a while, her ex walks away with $4.6 million. It's something no reasonable person would do. And even the trial court in awarding maintenance said, indulge me for just a minute, said that Matthew, that's her ex, generates a significant income, and this is a quote from the court, far in excess of anything Lisa would realistically be expected to generate, that his gross income from 2014 to 2016 was in excess of $500,000 annually, and his net income for the same period was in excess of $300,000. The court went on to say, Matthew's income history for the past five years is a strong indicator that he will continue to enjoy significant income into the future. No impairment of his realistic earning capacity is shown. Then it says, after saying what Lisa has done over the 25 years of the marriage, and her minimal work as a school teacher, the court found that her earning capacity is minuscule compared to Matthew's. And it said, even if she were able to find a full-time teaching job immediately, at best she's employable at a relatively low income as compared to Matthew, and does not have a future earning capacity anywhere near Matthew. So I would say under all of those circumstances, when you consider all of those facts, that a 15% share of the total property in this marriage is not reasonable. It's not something a reasonable person should do. And assuming that the court affirms the non-marital property award, we believe that division of marital property should be reversed as an abuse of discretion. Well, your argument certainly has some superficial appeal when you strictly look at it from a numerical financial standpoint. But the touchstone of proper apportionment is referred to as being equitable, not necessarily equal. So specifically, when you consider the discretion given to the trial court, what would you have suggested? What would I have suggested? I would have suggested under the circumstances, considering all the things that I raised, that Lisa receive all of the marital property. I've cited cases where such a division was affirmed where one of the parties had an excessive amount or a great amount of non-marital property. I've cited several cases, too, where the division goes anywhere from 60% to 80% or 90%. So I would say, oh, if that's your question, I would say she should have got the entire $1.6 million. The reason I say that, too, is if you then compare the two, he's still got two-thirds of the property, all non-marital. I'd agree with that, if you take the total value. And she's got about one-third. I mean, that is, in my judgment, equitable. That's fair. That's my point of view. That's my argument, that this is an inequitable determination based on the circumstances that are presented. Then what about the maintenance? Should the maintenance be lowered because she's going to get a share? No, I don't think so. The maintenance is there to maintain herself based on the standard of living that was enjoyed during her marriage. And the trial judge, I think, did a good job of saying that. The problem with the maintenance, though, as I see it, when you examine that and you take a look at that compared to property, the property award that she gets, okay, that's hers. I mean, she's going to keep that. That's not going to change, as is the one that he gets. Maintenance, however, is always modifiable based upon changed circumstances. So there is no guarantee that the maintenance that she gets is maintenance that she'll continue to get in the future.  So the maintenance is permanent but not the amount. Correct. Maintenance is always modifiable. That's correct. So there's no guarantee. My point is that there's no guarantee. Something could happen. I'm sorry? Something could happen. Right. And I think that one of the things I've learned in life is, in terms of having expectations, to expect the unexpected. And I think that an award of property in a greater amount. I mean, even if you think that the entire amount, that's not quite equitable in some regard, it should certainly be more than 50 percent, given all the facts of the case. And so that's our position. If the Court has any questions, I'll be happy to try and answer them. If not, I'll simply ask that you grant the relief that you request. Anything further? No. All right. Thank you very much, Mr. Barnhill. Thank you. We'll have an opportunity to address the Court again. Thank you. All right, Ms. Bauer, on behalf of the appellee, you may proceed. May it please the Court. My name is Nicole Bauer, and I am the attorney for the respondent appellee, Matthew Jones. And I'm here to argue today that, first of all, this appeal should be dismissed, based on the reasons stated in the motion to dismiss. And then if you should decide not to dismiss this appeal, well, the trial court's decision that the Law Jones stock shares are non-marital is not against the manifest weight of the evidence. And then further, the trial court did not abuse its discretion regarding distribution of the marital assets. Let's start out with the motion to dismiss. We have an unusual fact pattern as far as with this motion to dismiss. We have a divorce judgment in which Lisa Jones was awarded approximately $326,000 as a reimbursement to the marital estate. It was based upon the finding that these Law Jones stock shares were non-marital. And then there was also a lien imposed on Law Jones stock funeral homes in order to secure that judgment. After Matthew paid off Lisa Jones, gave her a check for $326,000, she cashed it. And then a little over a month later, she filed her first notice of appeal. And the amount that Lisa Jones was owed, the $326,000, it was clearly based on reimbursement of the marital estate because of the finding that those Law Jones stock shares were non-marital. Another feature that happened is, and it was outlined in Matthew Jones' affidavit, after this judgment, the judgment is virtually satisfied in its entirety. So different things happened. Like, for example, Matthew Jones, he deeded the residence to Lisa Jones. She took a mortgage on it. And then we also had the division, distribution of all the other property. Lisa Jones, she sold them. Is anybody arguing that Lisa Jones is entitled to less than what she received? What we're arguing is if you end up reversing, then there would be a finding that the Law Jones stock shares are marital property. And if it gets sent back, then the court is going to be making a determination on how to divide up that marital property. And so it does become relevant. It would just depend on how the court would divide things up. And so we do actually have to go back. And it's possible that the property division could be different in that situation. Where it stands now, you didn't file a cross-appeal, right?  But we would submit, Your Honor, that we do not have to. The case that was cited by the petitioner was the Cusper case, which was a limited situation where you had actually an appeal on a maintenance question, and there was no appeal regarding the division of marital property. So that's why the court made the finding that there had to have been a cross-appeal in that case. That's not a body of law that every time you end up submitting a motion to dismiss for the reasons stated, that you have to file a cross-appeal. Now, we would submit that this is just such a unique factual situation. These items were done. Lisa accepted them. And then plus, it was to Matthew Jones' distinct disadvantage as well if this judgment ends up being reversed and sent back to the trial court. And so we would just encourage you. We provided the different legal authority in the motion to dismiss, and we would just rest upon that. Moving forward, as far as the determination, then, of Ron Jones' stock shares being non-marital property, there's different aspects of this argument. And I think that's why there was the confusion dealing with the standard of review that was just brought up, because you have the whole issue of the timing in the very beginning. At the beginning, but he's talking about the 2004 redemption. Right, and the application of the law to it. That's all documentation. Do you agree with counsel that it probably should be a de novo review because the trial courts, we are going to review the same documentation that the trial court had? As far as... No dispute on the facts, correct? There isn't a dispute as far as the documentation, but there are some things, though, that were just brought up in the oral argument that I did find that I do want to make sure that we're clear on, and that there isn't a factual dispute. Like, for example, all of the monies paid relative to that stock redemption were paid by the corporation. And so the trial court made that finding, and that finding is certainly not against the manifest weight of the evidence. But as far as the application of the law to it and the analysis of the law, then, yes, that would be a de novo review. Just some other things that I'd like to mention. We really have a strong argument as far as when those stock shares were initially acquired, that they were acquired prior to the marriage. We've laid all that out in the briefs. Exactly. And that was also testified to by the brother in the mother, where I'm just aware it was. It took place, I believe, January, and they got married in July. Absolutely. And then, in addition, there was also documentary evidence that was not attacked in the petitioner's brief. He seemed to hone in more on the redemption issues. So if you could address that succinctly. Tell us why his position on the redemption was wrong. Okay. For a few reasons, Your Honor. And the first would be that we are supported by 50386.5 that does support that these stock shares are non-marital since the financing was for the redemption. It only used corporate assets as collateral. I recognize that there was a personal guarantee. The personal guarantee said specifically that it was unsecured. And if you look at the definition of collateral under the Uniform Commercial Code, Article 9 that we cited in the materials, we clearly did not have marital property that was used as collateral in this case. It did not happen. But then the specific case law that says the varying implications of secured versus unsecured. Had it been secured, would we have had an argument that it had some effect on the marital asset? If just we can look at the chronology of cases and really we get our support by a combination of cases. The first is the Blumner case where you have a corporate redemption and the court found in that case it resulted in an increase in value in the stock shares and therefore that increase in value of the stock shares remained non-marital. And then we also have the next case is the Wearies case. And with the Wearies case, it was actually even more dramatic because we didn't even have a corporate form. We had financing that was done where it even used marital property as collateral. And the court found in the Wearies case that using that marital property as collateral did not even transmute that non-marital property. So we have really an even more extreme situation than ours. And it provides great support that the personal guarantees did not result in making these stock shares non-marital. We also have the Drennan case, too, that we cited in our materials that give additional support. And this is where they signed some guarantees for a loan for non-marital property. And the court found that the execution of a mortgage note in that case, that it did not transmute the asset to non-marital property. So we would rely on those as the legal authority, that that redemption did not turn those stock shares into non-marital property or, excuse me, into marital property. Could you discuss the division of the marital estate? Certainly, Your Honor. Counsel argues that the 50-50 split, given the value of the non-marital estate, is just inequitable under these facts. What the criteria here is if there's an abuse of discretion. And with an abuse of discretion, it's where no reasonable person would rule as the trial court did. And you could go up here and say, well, I would have done it different. You know, I would have come up with a different outcome. That doesn't matter. Exactly. But here's the point. We do have to consider the amount of non-marital property that is awarded. That is a huge factor in determining a division of marital property. And when you listen to counsel's argument, you add it all together, 15% versus 85% in a 25-year marriage, how is that equitable? I truly believe it is because of all the other factors that you can look at, Your Honor. For example, the sufficiency of over $862,000 in order to meet Lisa Jones' needs. Further, out of that, there was a significant $326,000 award of liquid assets. Is that the judgment that was entered? Exactly. Exactly. That's part of the $800,000, so it's not an addition. That's correct. We're still talking about $860,000. Yes, and I just mean as far as the nature of the assets. That's it. And then further, there's the respondent's greater financial contribution to the acquisition of the marital assets. And we cited cases in the brief that explained that that can be considered as a factor. Further, significant maintenance award, $9,000 a month secured by her. It's not. $9,000 a month, a year from now, his income goes down, so does her maintenance. But his property still remains. Her property does not. Well, and that's an argument that you can print out. But regardless, though, in the 503 factors, there is factor 10 that talks about that you would look at whether the distribution that's made is in lieu of or in addition to maintenance. So it's still a relevant factor, even though if a person doesn't agree with it, it's still a factor that could be used. And then further, we have the nature of Law Jones, not an easily liquid asset, mainly income-producing asset. And so then the court took the income from it and came up with a healthy maintenance award. Most of the children further are no longer minors. The judgment awarded petitioner in the marital home. And the respondent has a large debt burden associated with Law Jones. And then further. It's his property. Of course he would have the debt, right? Certainly. And I don't have an issue with him having a debt burden, but it's just that could be another factor, too. And then finally, just with the types, if he ends up disposing of the stock shares, then it does result in a tax burden for him as well. And so it's interesting because there are so many divergent cases on this subject. And every single case that was cited by the petitioner showed no abuse of discretion. And I'd like to mention also just the cases that were brought up were very different that were cited by the petitioner. They had much lower maintenance awards. We went through the brief and listed each one on what the maintenance was. A pittance compared to what we have here. Further, there were vastly different amounts of assets that were at issue. And let's talk about the Romano case. And I would like to bring that up. And I recognize in the Romano case that there was a total of a $6 million marital estate. But what we have to remember is there was an over $50 million non-marital estate. And if you actually look at percentages in that Romano case where you consider the amount awarded to the wife totally, it was roughly 9% that was upheld. The husband ended up receiving 91%. And if you compare it to our case, the figures were expounded on a petitioner's brief. We have 15% in Lisa Jones' case if you look at all of it. So it's just really interesting because the award of Judge Ward, when you compare it to the Romano case, it actually would be more generous overall on a percentage basis. And so another thing I'd like to bring up as far as the distribution of the marital property is we've raised the argument that there was a waiver arguing this because it was not brought up at the trial court as far as distributing more than 50% until the claim for the motion for the reconsideration. And we believe that it was barred on that basis. There were many opportunities where the argument could have been made that we should be distributing more than 50% if the court finds that the Law Jones stock shares are a marital asset. Let me finish this off. Okay. Thank you. And we just believe that the standards are not met today. And we would appreciate an upholding of the trial court's decision. Thank you. Okay. I'm done. All right. Thank you very much. Thank you. All right. Mr. Farquhar. Thank you, Your Honor. I want to start with the last thing. It was brought up, the idea that asking for more than 50% of the marital property was somehow waived in the trial court. What happened in the trial court, and the court can take a look, is that my client's counsel asked for a 50-50 division of property based on his theory that the Law Jones stock was marital property. So he went a 50-50 to hold the pot. After the trial court entered its judgment finding the Law Jones was non-marital property, then my client's lawyer filed a motion to reconsider saying if that's the case, then she should get a higher share of the marital property. That's essentially the same argument you made there. Yeah, but that's not a waiver. I mean, it was never a waiver. That's my only point. I mean, that was true. Huh? Distinguished Romano. Well, I tell you what, I'm not certain that the facts of the case as recited were correct, and I don't have a clear recollection of Romano in mind. But I would say this about that. I've been doing this for a while, and the only cases that I've ever found, except maybe in a half a dozen instances, which were on all fours with the case which was being advanced before the appellate court, for the most part were in law school. The facts are always different. The one principle that emerges from all of those cases is not how big it was, but what it was in relation to what the other party was going to get. I mean, you have going back to the Atkinson case, which I think is the first case that made this principle. It was 1980. The court there said it's okay to give all of the marital property to one of the parties where the other person has non-marital property that they can rely on, and the Atkinson court did that. And subsequent to that time, that has always, always been the case. It's always been done. I'm not going to re-argue why I think 15% of total property is inappropriate or an abuse of discretion here because we've already done that, and I don't really have anything to add to that. There's another point that I wanted to make, though, too. Counsel says that one of the things the court should consider in evaluating this is the fact that her client made a greater financial contribution to the acquisition of the assets in the estate. Well, of course that's true. He was the guy who was working. He was the guy who made all the money. He was making a half a million dollars a year gross. So, of course, he made a greater contribution. Now, that, however, when you take a position or cases that say that, that kind of denigrates the whole idea of the homemaker contribution. So if you sit down and say, hey, he made all the money. What about her 25 years? What about her 25 years of raising kids, taking care of the family, being the glue, which was the term that kept the family together? That would accomplish something, too, and I believe that the homemaker provision was put into the Divorce Act with the idea of offsetting this kind of thing. And as far as his journey in the Los Angeles, I'm not going to bore you with all the details. They're in the briefs and stuff like that. But he got started. He got started with this just before and just after the parties were married. I have not argued about the first 1,000 shares because I understand that they're clearly a manifest way to the evidence standard appliance. I realize that that's an uphill battle. And although I would have decided differently based on the facts, I don't know that I could slog through that and say to this court that, you know, Judge didn't have a reason for doing that. But there are a lot of fuzzy things that are involved in that. But my point is she was there all the way. Ninety-six percent of the money that was paid for that first 1,000 shares came from marital funds after the parties were married. He says, her client says, that when it came to the marital estate, I'm sorry, marital funds, the checking account, everything was paid out of there. He said that. I mean, I can dig for the point of the record, but he said that and I mentioned it in the brief. And he said he did not separate those until 2014 after the divorce proceeding was all in place. So my point is not so much the idea of tracing all of this sort of stuff, but, yeah, he made a lot of money and he worked hard to do it. But she was there all the way helping while he was making all that money, taking care of things that he didn't have to worry about so he could go out and make all that money. And that's worthy of consideration, too, here, not just the idea that he made the double. So in conclusion, unless the court has questions and stuff like that, I would say I would ask for the relief that I requested. In the brief, specifically, I would ask that the court deny the motion to dismiss based on a release of errors doctrine. I mean, I honestly don't think, I don't want to denigrate what counsel said, but I don't think it makes any sense at all under the circumstances presented. And if the court's going to affirm the non-marital property aspect, then I would ask that my client's share of marital property be increased. And I would say significant. Thank you. All right. Thank you, Mr. Bergman. Thank you. I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement and a written decision will issue in due course. Thank you very much.